IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| MI JA PARK, *et al.*, | * |
| Plaintiffs, | * |
| | * |
| v. | Civil Case No.: PWG-15-3606 |
| | * |
| MYUNG GA OF MD, INC. | * |
| d/b/a LIGHTHOUSE TOFU, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION & ORDER

On November 25, 2015, Plaintiffs Mi Ja Park and Eun Young Bang filed this action against their former employer, Myung Ga of MD, Inc., doing business as Lighthouse Tofu, and its owner-operators ("Lighthouse") alleging that Lighthouse failed to pay them minimum wages and overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 to 3-430. Compl. ¶¶ 1–2, ECF No. 1.   In addition, the Complaint alleges that Lighthouse's failure to pay minimum wages and overtime compensation also violated the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 to 3-509. *Id.* ¶ 2. On July 29, 2016, the parties jointly moved for court approval of the settlement agreement they have executed. Jt. Mot. & Mem., ECF No. 8. I find the net amount Park and Bang are to receive to be fair and reasonable in light of the facts of this case.

## I.    BACKGROUND

Park and Bang worked as waitresses at Lighthouse Tofu for periods of about four-and-a-half and three-and-a-half years respectively before their August 2015 terminations.  Compl. ¶¶ 17–20.  The Plaintiffs allege that Lighthouse paid them hourly wages between $3.00 and $4.00 during their tenures and typically required them to work sixty hours a week. *Id.* ¶¶ 22–24.  Park and Bang also allege that Lighthouse stole their tips by requiring equal distribution of tips among all Lighthouse employees but subjecting only tips collected by the waitresses and not those collected by the owner-operators to distribution. *Id.* ¶¶ 26–27.  The Plaintiffs further allege that Lighthouse retaliated against them by terminating their employment only days after they complained of underpayment of wages and tip theft. *Id.* ¶¶ 36–39.

The Settlement Agreement: "release[s] Defendants . . . to and from any claims . . . arising from any omissions, acts, or facts that have occurred up until and including the Effective Date of this Settlement Agreement . . . ."  Agreement ¶ 3, ECF No. 8-1.  The Agreement provides for litigation costs but not attorneys' fees.  Jt. Mot. & Mem. 3.

## II.   DISCUSSION

### a.  FLSA Settlement Generally

Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees.  To that end, the statute's provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).  Court-approved settlement is an exception to that rule, "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, No.

2

DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

Although the Fourth Circuit has not addressed the factors to be considered in approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Id.* at *3 (citing *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010)). The settlement must "reflect a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions," which includes findings with regard to (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement. *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1355; *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011)). These factors are most likely to be satisfied where there is an "assurance of an adversarial context" and the employee is "represented by an attorney who can protect [his] rights under the statute." *Lynn's Food Stores*, 679 F.2d at 1354.

### b. *Bona Fide* Dispute

In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement. *See Lomascolo*, 2009 WL 3094955, at *16–17. The Joint Motion and Memorandum makes clear that several issues are in *bona fide* dispute. Most importantly, the parties disagree about whether Park and Bang were permitted to keep all of the tips they received and whether they received notice of a tip credit; the number of overtime hours

3

they worked; whether they were paid for hours they did not work; and whether their termination was retaliation for engaging protected activity under the FLSA and Maryland law.

### c.  Fairness & Reasonableness

In evaluating the fairness and reasonableness of this settlement, I must consider:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff[]; (5) the opinions of class counsel . . . ; and (6) the probability of plaintiff['s] success on the merits and the amount of the settlement in relation to the potential recovery.

*Lomascolo*, 2009 WL 3094955, at *10.

First, the parties engaged in no formal discovery but did exchange and review relevant records relating to Plaintiffs' employment and hours worked as well as Lighthouse's business records. Jt. Mot. & Mem. 3. Second, the parties negotiated the Settlement Agreement at an early stage in the litigation prior to the initiation of formal discovery. *Id.* With regard to the third factor, the parties state that they

> engaged in arms-length and good faith negotiations through their respective counsel. Moreover, prior to settlement, Plaintiffs were given the opportunity to review relevant documents related to their wage claims, and to consider the potential value of their claims as well as the strength of Defendants' defenses.

*Id.* at 4. I accept these representations and am satisfied that no fraud or collusion contributed the parties' decision to settle the claims. Additionally, the parties have established counsel's experience with FLSA cases. *See id.* As for the fifth factor, it is not relevant in this, as it pertains to class actions. *See Lomascolo*, 2009 WL 3094955, at *10.

With regard to the sixth factor, the Plaintiffs estimate their total damages to be $122,566 each, a figure that "include[es] back pay, liquidated damages, and treble damages." Jt. Mot. & Mem. 3. The bases for Park and Bang's liquidated and treble damages claims are sections of the

4

FLSA and MWPCL that permit enhanced recovery for, among other things, unpaid overtime wages. *See* 26 U.S.C. § 216; Lab. & Empl. §§ 3-501(c)(2)(iv), 3-507.2(b). If Plaintiffs' estimate is reduced to exclude liquidated and treble damages, their claims for unpaid wages equal $40,855.33 each.[1] The settlement amount of $39,166.50 per Plaintiff therefore amounts to 95.9% of the unpaid wages that Park and Bang seek. *See* Agreement ¶ 1.

In order to secure liquidated damages, the Plaintiffs would have to prove that the failure to pay the disputed wages was not the result of a "good faith" belief that the FLSA did not require such payment. 29 U.S.C. § 260. For treble damages, they would have to prove that nonpayment was "not as a result of a bona fide dispute." Lab. & Empl. § 3-507.2(b). But the settlement amount takes

> into account the possibility that a finder of fact may determine that defendants properly complied with the FLSA "tip credit" rules; the possibility, even if liability were found, any violation of the FLSA may be found to have been made in good faith and not to be willful; the possibility that Defendants would be entitled to an offset for payments made for hours not worked by Plaintiffs; [and] the uncertainty and risks in litigation, including the Court's eventual determination as to how many hours Plaintiffs worked in a given workweek.

Jt. Mot. & Mem. 5. Given the *bona fide* disputes in this case there, is a "possibility that, even if liability were found, Plaintiff may not be entitled to additional liquidated [or treble] damages." *See Berrios v. Green Wireless, LLC*, No. GJH-14-3655, 2016 WL 1562902, at *3 (D. Md. Apr. 18, 2016).[2] Under these circumstances, I do not find the settlement amount unreasonable.

---

[1] "Plaintiffs are entitled to recover liquidated damages under the FLSA or treble damages under the [MWPCL], but not both." *Quiroz v. Wilhelm Commercial Builders, Inc.*, No. WGC-10-2016, 2011 WL 5826677, at *3 (D. Md. Nov. 17, 2011). Thus, in order to calculate Park and Bang's unpaid wage claims, I divided $122,566 by 3 to eliminate treble damages.

[2] The Settlement Agreement designates half of the settlement amount as unpaid wages and the other half as liquidated damages. Agreement ¶ 3; Jt. Mot. & Mem. 3. Nevertheless, given the existence of *bona fide* disputes among the parties, it is possible that Park and Bang would be unable to recover either liquidated or treble damages at trial. *See Berrios*, 2016 WL 145902, at

The Settlement Agreement contains a general release of claims beyond those specified in the Complaint. Agreement ¶ 3. A general release like this can render settlement agreements unreasonable. *See, e.g., Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010) (concluding that "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer" that "fails judicial scrutiny"); *McKeen–Chaplin v. Franklin Am. Mortg. Co.*, No. 10-5243, 2012 WL 6629608, at *3 (N.D. Cal. Dec. 19, 2012). But, if the employee is compensated reasonably for the release executed, the settlement can be accepted, and I am not required to evaluate the reasonableness of the settlement as to the non-FLSA claims. *See Saman*, 2013 WL 2949047, at *5 (citing *Robertson v. Ther-Rx Corp.*, No. 09-1010-MHT, 2011 WL 1810193, at *2 (M.D. Ala. May 12, 2011); *Bright v. Mental Health Res. Ctr., Inc.*, No. 09-1010, 2012 WL 868804, at *2 (M.D. Fla. Mar. 14, 2012)). As explained above, the Agreement compensates Park and Bang for 95.9% of their claims for unpaid wages. This percentage fairly compensates the Plaintiffs for the general release executed.

The proposed settlement does not provide for an entry of judgment, and some courts view settlements without such a stipulated judgment as *per se* unreasonable. *See Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 410 (D. Md. 2014) (citing, *inter alia, Lynn's Food Stores*, 679 F.2d at 1353; *Dionne v. Floormasters Enters., Inc.*, 667 F.3d 1199, 1205 (11th Cir. 2012)). But *Brooklyn Savings v. O'Neil*, 324 U.S. 697 (1945), on which these courts rely, did not "involve[] a settlement executed between an employer and employee as the result of a *bona fide* dispute as to the coverage of the FLSA." *Duprey*, 30 F. Supp. 3d at 410 (quoting *O'Connor v. United States*, 308 F.3d 1233, 1242 (Fed. Cir. 2002)). In the absence of clear binding authority to the contrary,

---

*3. Irrespective of the parties' designation that the settlement covers both unpaid wages and liquidated damages, the appropriate comparison for the reasonableness inquiry is the amount of unpaid wages the Plaintiffs seek compared to the total settlement amount. *See id.*

however, when there are "*bona fide* disputes as to liability and the costs and risks of proceeding on the merits" a plaintiff "is permitted to agree that . . . accepting a lesser amount than he ultimately could receive at trial is reasonable." *Id.* This settlement, like the one in *Duprey*, "is better viewed as a stipulation to an amount that fairly compensates [Plaintiff] for the release, given the specific risks of the case at bar, rather than an impermissible waiver under *Brooklyn Savings*." *Id.* The amount provided in consideration for the release is fair and reasonable.

### d. Attorneys' Fees

The Settlement Agreement provides for no attorneys' fees. Accordingly, the reasonableness inquiry is restricted to the settlement amount.

### III.  **ORDER**

Accordingly, it is this 12th day of October, 2016, hereby ORDERED that:

1. The Joint Motion to Approve Settlement, ECF No. 8, IS GRANTED.
2. The Clerk is DIRECTED to CLOSE THE CASE.

Paul W. Grimm
United States District Judge

jlb